UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE PETITION OF PINEWOOD
TECHNOLOGIES ASIA PACIFIC
LIMITED FOR JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

Case No. 0:24-cv-60119-WPD

**MOTION TO QUASH SUBPOENA**

Respondent William Berman ("Berman"), pursuant to Federal Rules of Civil procedure 45(c)(3)(A) and 26(c), moves this Court for entry of an order quashing the Subpoena to Testify at a Deposition in a Civil Action ("Subpoena") served on Berman pursuant to the Court's Order (Dkt. 13) granting Petitioner Pinewood Technologies Asia Pacific Limited's ("PTAP") Ex Parte Petition for Judicial Assistance Pursuant to 28 U.S.C. § 1782 ("Petition") (Dkt. 1).

### INTRODUCTION

PTAP's Subpoena is no more than an impermissible attempt to end-run orders and discovery rules in both England, where the underlying matter is pending, and the discovery rules in the United States. The discovery sought by PTAP in this case relates to two UK entities: Pinewood Technologies PLC ("Pinewood Technologies") and Pendragon PLC ("Pendragon"). PTAP is currently embroiled in litigation in the High Court of Justice of England and Wales ("High Court") with Pinewood Technologies. Pendragon is Pinewood Technologies' parent company, and Berman is Pendragon's Chief Executive Officer. Because the High Court rejected PTAP's attempt to secure discovery to support its prospective claim directly from Pinewood Technologies itself (a claim which the High Court described as "currently no more than mere speculation"), PTAP petitioned this Court to obtain the requested discovery from Berman in his individual capacity. *See* Dkt. 5-8 ¶ 60; Dkt. 1. The Subpoena should be quashed because the Subpoena does not meet the

1

requirements of 28 U.S.C. § 1782(a) and the *Intel* factors, and the apex doctrine otherwise bars the requested discovery.

## BACKGROUND

The underlying matter, *Pinewood Technologies Asia Pacific Limited v. Pinewood Technologies PLC,* Case No. HT-2022-000244, is a breach of contract action that was initiated in July 2022 in the High Court (the "UK Action"). The contractual dispute stems from a dealer management system ("DMS") that Pinewood Technologies develops and supplies to resellers to market and sell. *See* Dkt. 5-8 ¶¶ 4, 14, 18. PTAP contracted with Pinewood Technologies through two Reseller Agreements to be the exclusive reseller for Pinewood Technologies' DMS in certain areas in the Asia Pacific region. *See* Dkt. 5-8 ¶ 7. When the relationship went south, PTAP filed suit in the High Court for breach of the Reseller Agreements, and Pinewood Technologies counterclaimed. *See* Dkt. 5-8 ¶¶ 14, 18, 21.

What PTAP fails to mention in its Petition is that the High Court "handed down judgment on 13 October 2023 . . . granting reverse summary judgment [against PTAP] on the entirety" of PTAP's breach of contract claim, except "in relation to [PTAP's] claim for 'Incurred Costs.'" *See* Exhibit A (March 14, 2024 High Court Approved Judgment ¶ 6). The High Court also granted summary judgment in Pinewood Technologies' favor on its counterclaim against PTAP. *Id.* at ¶ 9. As of April 2024, the High Court's judgment requires PTAP to pay Pinewood Technologies approximately $980,000.

The Petition also omits that PTAP appealed the reverse summary judgment against it, which was decisively affirmed, and it applied for and was refused permission to appeal the Judgment Debt. *Id.* at ¶¶ 11, 13. When Pinewood Technologies subsequently attempted to collect on the Judgment Debt in December 2023, PTAP requested not one, but two, installment payment

plans. *Id*. at ¶ 15. PTAP subsequently proposed a third payment plan to the High Court, on which it is has not made any payment to date, even though PTAP "accepts that the failure to pay the sums due … was not a trivial breach." *Id.* at ¶ 26. Unimpressed, the High Court stated that the "default was a failure to pay the sums which the Court had ordered should be paid." *Id.* at ¶ 28. The High Court ordered "for payment to be made in full" by June 1, 2024. *Id.* at ¶ 33. In sum, PTAP is currently under a court order to pay Pinewood Technologies approximately $980,000 (inclusive of interest), and it is in default of that order.

Over a year after PTAP commenced the UK Action, and with summary judgment looming, PTAP sought discovery from the High Court to substantiate a fraud or fraudulent misrepresentation claim against Pinewood Technologies, which would be an exception to the terms of the Reseller Agreements. *See* Dkt. 5-8 ¶¶ 58-60. The Petition states that "English courts require evidentiary support for claims of fraud, hence this petition and the relief requested herein." Dkt. 1. However, PTAP omits that the High Court found that "PTAP's case as to the Fraud Argument is currently no more than mere speculation." Dkt. 5-8 ¶ 60. Going further, it held that "it is fanciful to suppose that PTAP will have a positive case on fraud or fraudulent misrepresentation at trial," and that the requested discovery "to determine *whether* there is a case to be run amounts, to my mind, to no more than a fishing expedition." Dkt. 5-8 ¶¶ 61, 71 (emphasis added).[1]

Against this backdrop, PTAP applied to this Court for "assistance" and now seeks American-style discovery from a non-party in order to conjure a new claim to avoid paying Pinewood Technologies the Judgment Debt. Specifically, it petitioned to subpoena Berman

---

[1] The High Court also stated that "the categories of document that [PTAP's counsel] seeks would not be disclosable in the proceedings in the absence of an amended case to plead the Fraud Argument and I reject his case that they are disclosable absent such a case." *Id.* at ¶ 71. It agreed with Pinewood Technologies that "it would be contrary to the purpose and objectives of the [discovery rules] to order disclosure in relation to unpleaded issues purely on the grounds that something might turn up which will change the shape of the proceedings." *Id.* at ¶ 70.

*personally* because he is the Chief Executive Officer of Pendragon, the UK-based parent company of Pinewood Technologies, to produce documents and testimony to support a prospective "claim" against Pinewood Technologies, which the High Court has already denounced as speculative.[2] After this Court granted the Petition (Dkt. 13), PTAP served the Subpoena on Berman. In addition to this Motion to Quash Subpoena ("Motion"), Berman is also filing a Motion for Protective Order or Stay to prohibit or stay the discovery pending resolution of this Motion.

## STANDARD

Section 1782, petitions are regularly and properly reviewed on an ex parte basis. *Matter of Colombo Agroindustria S.A.*, No. 22-21670-MC, 2022 WL 2167719, at *1 (S.D. Fla. June 16, 2022). Consequently, orders granting a Section 1782 petition typically only "authorize" the discovery, thereby allowing the opposing party to "raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application ex parte." *In re: Application of Jt. Stock Co. Raiffeinsenbank,* No. 16-MC-80203-MEJ, 2016 WL 6474224, at *3 (N.D. Cal. Nov. 2, 2016). Because the Subpoena was issued ex parte, this Motion is Berman's first opportunity to be heard and challenge the issuance of the Subpoena under Section 1782.[3] *See LAE Techs. Hong Kong Ltd. v. Demuren*, No. CV 23-2314 (ZNQ), 2024 WL 863464, at *2 (D.N.J. Feb. 29, 2024) (Importantly, "[a]n order authorizing discovery under Section 1782 may be issued on an *ex parte* application, without prejudice to the subpoenaed party's right to file a motion to vacate the order and/or quash the subpoena.").

---

[2] Since April 2020, Berman has been a statutory director of Pinewood Technologies, a party to the UK Action. He holds this position by virtue of his status as an officer of Pendragon.

[3] Rule 45 of the Federal Rules of Civil Procedures governs motions to quash subpoenas. Fed. R. Civ. P. 45(d)(3)(A). It requires the Court to modify or quash a subpoena where, among other things, it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

A Court may grant an application for judicial assistance if the following statutory requirements in Section 1782 are met:

> (1) the request must be made by a foreign or international tribunal, or by any interested person; (2) the request must seek evidence, whether it be the testimony or statement of a person or the production of a document or thing; (3) the evidence must be for use in a proceeding in a foreign or international tribunal; and (4) the person from whom discovery is sought must reside or be found in the district of the court ruling on the application for assistance under Section 1782.

*In re Jagodzinski*, No. 18-20606-MC, 2019 WL 1112389, at *3 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted,* No. 18-20606-CIV, 2019 WL 2255564 (S.D. Fla. Apr. 8, 2019) (citing *In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007) and 28 U.S.C. § 1782) (internal quotations omitted). Even when those requirements are met, a district court is not required to grant a Section 1782(a) discovery application simply because it has the authority to do so. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004)); *In re Clerici*, 481 F.3d at 1334. Instead, "a district court must also consider several discretionary factors before ordering the discovery to be produced," and must "exercise their discretion in ordering any production under the statute." *In re Jagodzinski*, 2019 WL 1112389, at *3 (citing *Intel Corp.*, 542 U.S. at 264-265, and denying application for assistance).

The *Intel* factors for the district court to consider include: "(1) whether the respondents are parties in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign tribunal to assistance from a United States federal court; (3) whether the discovery application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is intrusive or burdensome. *Id.; In re Clerici*, 481 F.3d 1324, 1334 (11th Cir. 2007). Furthermore, "the District Court deciding the application must still make certain that the requested discovery complies with the Federal Rules of Civil Procedure." *In re Jagodzinski*, 2019

WL 1112389 (citing *In re Chevron Corp.*, 2012 WL 3636925, at *6 (S.D. Fla. June 12, 2012) ("For example, if the subpoena at issue is directed to a party that resides or is found in the district, same must comply with Fed. R. Civ. P. 45.")). Indeed, even if the Subpoena met the Section 1782 statutory requirements and the *Intel* factors, the *Intel* factors "are neither exhaustive nor dispositive." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944, at *4 (N.D. Cal. Jan. 17, 2013). They are not meant to be "applied mechanically ... [and a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP,* 895 F.3d 238, 245 (2d Cir. 2018). Notably, a court may deny a Section 1782 application based on the apex witness doctrine. *See e.g.*, *Frasers Grp. PLC v. Gorman*, No. 23 Misc. 348 (PAE), 2023 WL 6938284, at *3-4 (S.D.N.Y. Oct. 19, 2023) (finding that the apex witness doctrine strongly disfavored authorizing the deposition and therefore denying the application for judicial assistance pursuant to Section 1782).

Under the apex witness doctrine, courts give special scrutiny to requests to depose high-ranking corporate executives. *Id.* Indeed, "[c]ourts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) (granting motion to quash and for protective order). A party seeking such a deposition must show that the corporate executive has "personal knowledge of relevant facts or some unique knowledge that is relevant to the action." *Frasers Grp. PLC v. Gorman*, 2023 WL 6938284, at *3.

As discussed below and in the factual background provided to the Court above, the statutory requirements and *Intel* factors support the quashing of the Subpoena, and PTAP's Petition

should have otherwise been denied based on the rules governing discovery, including the apex witness doctrine.

## ARGUMENT

**A. The Subpoena seeks documents for a speculative claim that is unrelated to non-party Berman in his individual capacity.**

As a preliminary matter, the Subpoena should be quashed because the Petition and supporting documents demonstrate that it is no more than a "fishing expedition" to conjure a claim against Pinewood Technologies, and the Subpoena is otherwise improperly directed to Berman. *See* Dkt. 5-8 ¶¶ 61, 71. The purported justification for the issuance of the Subpoena is based on several statements in the documents supporting the Petition. *See* Dkt. 1, 4, 5. The statements include:

- "*If* the evidence obtained shows that [Pinewood Technologies] had no intention of performing its contractual obligations while representing to [PTAP] that it would do . . . PTAP would have a claim in fraud against [Pinewood Technologies]." *See* Dkt. 5 ¶ 11 (emphasis added).

- "[PTAP] *considers* that there is reason to belie (sic) that [Pinewood Technologies] deliberately delayed addressing Development Items after new management took over at Pendragon LLC (sic)." *See* Dkt. 5 ¶ 12 (emphasis added).

- "[PTAP] considers that [Pinewood Technologies] made representations to [PTAP] of an intention to perform its contractual obligations and complete the outstanding Development Items in circumstances where, *it is potentially to be inferred*, there was in fact no such intention." *See* Dkt. 5 ¶ 22 (emphasis added).

PTAP's position is speculative at best, and previously determined by the High Court.[4]

---

[4] *See* Dkt. 5-8 ¶ 60 ("[PTAP's] case as to the Fraud Argument is currently no more than mere speculation. Mr. Neilsen's statement acknowledges that there 'may be a legitimate explanation' for the requests made by Pinewood and he accepts that 'Pinewood had a legitimate financial interest in our successful growth of the Pinewood DMS in the Asia Pacific market.' … On close analysis he goes no further than to say that he 'suspects' wrongdoing on the part of Pinewood and that he 'is concerned' at the possibility that a conscious decision was made by Pinewood to drive [PTAP] out of business and steal its customer base").

Similarly, in addition to the overbroad scope, *see infra*, the Subpoena almost exclusively requests documents relating to Pinewood Technologies, and neither its parent, Pendragon, where Berman serves as the Chief Executive Officer, or Berman individually. *See* Dkt. 6 at Ex. 5. For example, the Subpoena requests documents "relating to the sales, distribution, and/or actual or planned expansion of [Pinewood Technologies' DMS] in the Asia Pacific region." *See* Dkt. 6-5 at pg. 7 ¶ 1. It also requests documents "relating to actual or potential liability and/or litigation between [Pinewood Technologies] and *any* of its resellers of the DMS." *See* Dkt. 6-5 at pg. 7 ¶ 2. Only one request names Pendragon—the last request—and PTAP limits the request to documents relating to *Pinewood Technologies'* business, strategy, and growth in Asia, and the value attributed to this market. *See* Dkt. 6-5 at pg. 7 ¶ 5.

Tellingly, none of the requests for documents concern Berman in his individual capacity, which is how the Subpoena is directed.[5] *See In re IPC Do Nordeste, LTDA, For an Or. Seeking Discovery Under 28 U.S.C. 1782*, No. 12-50624, 2012 WL 4448886, at *1 (E.D. Mich. Sept. 25, 2012) (granting motion to quash and stating that "[o]ne Brazilian corporation (IPC) travelling to the United States to seek information regarding a second Brazilian corporation (Dow Brasil) from a third party (Dow Chemical) for use in a case pending in Brazilian court is not an efficient manner of gathering information in the possession of the second Brazilian corporation (Dow Brasil)").[6] Furthermore, if a viable potential claim existed, PTAP could have obtained the documents it seeks from Pinewood Technologies in the UK Action. *See* Dkt. 5-8 ¶ 64 ("it has been accepted … that the court has an inherent jurisdiction to order disclosure"). Because PTAP does not have one, the discovery it sought was prohibited in the UK Action, and it should be prohibited here as well.

---

[5] *See infra* at Section C(4).

[6] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *4 (stating that the "the *Intel* factors are neither exclusive nor mandatory. They are guidelines" and the court may consider additional factors).

8

## B. It is not within reasonable contemplation that the requested discovery is "for use in a proceeding."

Section 1782 provides that the district court may order the requested discovery "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. Contemplated actions meet the "for use" requirement if a proceeding is "within reasonable contemplation." To be in "reasonable contemplation," "[t]he future proceeding must be more than speculative … and 'a district court must insist on reliable indications of the likelihood that the proceedings will be instituted within a reasonable time.'" *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014) (citations omitted) (finding no error in the district court's grant of the petition for assistance where petitioner provided "reliable indications" that a proceeding would eventuate, and where an extensive internal audit was completed and petitioner provided a "detailed explanation of its intent" to pursue proceedings); *see also In re Pott*, 2013 WL 3189262, at *1 (S.D. Fla. June 20, 2013) (vacating its granting of the amended application for judicial assistance where multiple Argentine courts had dismissed petitioner's criminal action and he was "simply hoping" that the appellate court would reconsider).

Here, the High Court granted summary judgment against PTAP in the UK Action, and ordered the payment of the Judgment Debt. *See* Exhibit A. While the documents support the Petition theorize how PTAP "would have a claim in fraud," and that it "intends to file in [the] ongoing legal proceeding against Pinewood Technologies," their basis is speculative and fails to demonstrate by a "reliable indication" that a claim would eventuate. *See Supra* at Section A; Dkt. 5 ¶ 11, 12, 22. Indeed, even the High Court in the UK Action found that PTAP's requested discovery was wanting for intent or a factual basis. *See* Dkt. 5-8 ¶¶ 69-72 (agreeing with Pinewood Technologies' position that "it would be contrary to the purpose and objectives of the Practice

9

Direction to order disclosure in relation to unpleaded issues purely on the grounds that something might turn up which will change the shape of the proceedings."). PTAP's counsel in the UK was likewise unconvincing. *See* Dkt. 5-8 ¶ 56 (stating that PTAP's counsel "accepted at the outset of his submissions on this topic that it was equally possible to infer innocence on the facts that are currently available to PTAP"). PTAP's Petition and its supporting documents merely detail what it hopes to find on the basis of a claim that it hopes to plead. This does not meet the "for use" requirement of Section 1782, and the Subpoena should therefore be quashed.

### C. The *Intel* factors do not support the issuance of the Subpoena.

Even if the Petition did meet the statutory requirements under Section 1782, the *Intel* factors do not support the issuance of the Subpoena.

#### 1. The First Intel Factor – Pinewood Technologies is a participant in the UK Action and Berman is its Statutory Director and its parent's Chief Executive Officer.

The first *Intel* factor asks whether "the person from who discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. Generally, discovery is not permitted when the respondent is a participant in the foreign proceeding. *Id*. at 244. Specifically, the Supreme Court stated that "when the person from whom discovery is sought is a participant in the foreign proceeding ... the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.*

This factor militates against allowing Section 1782 discovery when it is sought from a participant in the foreign tribunal even if it is a related, but distinct entity. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004) (declining the application for discovery from the law firm representing the petitioner's opponent in German litigation because "for all intents and purposes petitioners are seeking discovery from [] their opponent in the German

10

litigation . . . [and] petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'"); *In re Kreke Immobilien KG*, No. 13 MISC. 110 NRB, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ("To the extent that the petitioner seeks documents from Oppenheim—and is only doing so through Deutsche Bank because Oppenheim is now its wholly-owned subsidiary—discovery is fundamentally being sought from a participant in the German proceeding."). For example, in *In re Jud. Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, the district court denied the motion to compel compliance with the Section 1782 subpoena and instead quashed the subpoena where the only connection to the District was that the director of the respondent in the foreign litigation resided in the District at the time the subpoenas were served. No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015) (quashing subpoena where petitioner had contemplated initiating another action for fraud for over a year and the dispute was otherwise being litigated in the Netherlands and the documents within the jurisdictional reach of the foreign court); *see also In re IPC Do Nordeste, LTDA, For an Or. Seeking Discovery Under 28 U.S.C. 1782*, No. 12-50624, 2012 WL 4448886, at *5–6 (E.D. Mich. Sept. 25, 2012) (granting motion to quash and finding that there was nothing to suggest that the requested information would be in the possession of the respondent and not the party to the underlying litigation).

Here, PTAP is undoubtedly seeking discovery from Pinewood Technologies. However, faced with the High Court ruling that it will not permit a "fishing expedition," PTAP has redirected its efforts to request discovery from Berman in his individual capacity. *See* Dkt. 5-8 ¶ 61; Dkt. 5 ¶ 24 (stating that English courts can order third parties to make disclosures in support of a contemplated claim when certain criteria are met, and that "English courts also have a power to

order third parties to produce documents … but this is exercised with caution."). Even so, the extensive history of the factual background—omitted from PTAP's Petition—does not support the issuance of the Subpoena. Specifically, while PTAP states that Berman is not named in the UK Action and will not be, he is a Statutory Director of Pinewood Technologies and the Chief Executive Officer of Pendragon, Pinewood Technologies' parent company. With this in mind, it is clear that the discovery requested from Berman could be requested from the parties in the UK Action. Indeed, in PTAP's own words, it could seek discovery in the UK from third parties within the jurisdiction. *Id.; see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *2 (affirming where the "Special Master found that, despite Saveri's non-party status, it is obvious that Sharp actually seeks information about Defendants, some of whom are subject to Korean discovery rules as parties to the Korean Litigation"). The Subpoena should therefore be quashed. Further, while the High Court has not currently exercised jurisdiction over Berman and "depositions are not part of the disclosure procedures in England," that is merely an additional reason why—under the third *Intel* factor—the Subpoena should be quashed. Dkt. 5 ¶ 24-25.

2. **The Third Intel Factor – PTAP seeks assistance from this Court to sidestep the discovery restrictions and High Court's order in the UK Action.**

As to the third *Intel* factor, the discovery requested by the Berman Subpoena is undoubtedly an attempt to circumvent foreign proof-gathering restrictions and orders in the UK Action. While it "is not a prerequisite for a § 1782 applicant to exhaust all potential discovery procedures in the foreign proceedings in order to obtain a federal court's assistance under the statute … a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis. Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *Compare In re Application of Gilead Pharmasset LLC*, No. CV 14-MC-243 (GMS), 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015) (finding that the third factor

12

weighed against granting the application for assistance) (internal citations and quotations omitted), and *In re Petrus Advisers Investments Funds, L.P.*, No. 22-CV-22437, 2023 WL 3673372, at *4 (S.D. Fla. May 26, 2023) (finding that the third *Intel* factor was in petitioner's favor and it convincingly showed that the sought-after discovery was outside the territorial limit of the foreign court and "there was no indication [petitioner] has attempted to circumvent Austrian proof-gathering restrictions.). Indeed, "[a]ttempted end-runs around seeking discovery in the underlying proceedings are disfavored in § 1782 proceedings." *In re Bahamas Island Consortium Ltd.*, No. 6:23-MC-2-WWB-DCI, 2023 WL 4931896, at *3 (M.D. Fla. Aug. 2, 2023); *see also In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 177 (S.D.N.Y. Aug. 24, 2020) ("It appears that Applicant may be trying to do an end run around proof-gathering restrictions in Brazil").

Here, PTAP's supporting documents state that the "English courts could not compel the appearance of Mr. Berman, who resides in Florida, not within the territorial boundaries of England." *See* Dkt. 5 ¶¶ 24-25. While this *may be* true as to Berman's individual capacity[7], PTAP fails to mention that the High Court chose not to permit PTAP to obtain the requested discovery in the High Court action because PTAP's prospective fraud claim was "no more than speculation" and its discovery attempts to "determine whether there is a case … no more than a fishing expedition." Dkt. 5-8 ¶¶ 60, 71; *see also Fuhr v. Credit Suisse AG*, 687 Fed. Appx. 810, 819 (11th Cir. 2017)(unpublished) (stating that even if "the district court could have denied the motion to quash based on a proper review of the record," affirming a "discretionary decision based on an improper view of the facts or law . . . would usurp 'discretion that rightfully belongs to the trial court.'").

---

[7] Berman is the CEO of a UK-based company and is physically located in the UK far more than he is in the United States (including presently), thus the UK court *could* exercise jurisdiction over him if he, personally, was properly the subject of discovery and validly served with process.

13

The documents sought by PTAP would undoubtedly be available from other sources in the UK, including the parties in the UK Action—if the High Court found that PTAP was entitled to obtain the requested discovery—but PTAP is attempting to circumvent the limits on disclosure procedures in England and obtain the discovery through this Court and from Berman in his individual capacity for a speculative claim. *In re Devine*, No. 2:22-MC-8-JES-NPM, 2022 WL 5264880, at *3 (M.D. Fla. Sept. 20, 2022) (denying the application for judicial assistance and finding that it was an attempted end-run around prior orders and the foreign government had not otherwise petitioned the court to obtain the documents). This third *Intel* factor therefore weighs in favor of quashing the Subpoena.

### 3. The Fourth Intel Factor – The requested discovery is unduly intrusive and burdensome.

As to the fourth *Intel* factor, almost every single request for documents in the Subpoena seeks "all" documents or communications, and sometimes both, "relating to" broad categories of documents without limitations. *See* Dkt. 6-5 pg. 7; *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *9 (S.D. Fla. Dec. 18, 2018). For example, in its second request, PTAP seeks "*All* Documents relating to [PTAP], *including* any documents or communications relating to reseller agreements, David Neilsen, and/or Josephine Lee." *See* Dkt. 6-5 pg. 7 ¶ 2 (emphasis added). This request seeks every document relating to PTAP, without limitation and irrespective of whether the documents are relevant to the claims PTAP seeks to bring in the UK Action. This is overbroad, and therefore improper. *In re Bernal*, 2018 WL 6620085, at *9.

Similarly, the first request seeks every document "*relating to the sales, distribution, and/or actual or planned expansion*" of Pinewood Technologies' DMS in the Asia Pacific region from the last four and a half years. *See* Dkt. 6-5 pg. 7 ¶ 1 (emphasis added). This request is both unduly intrusive and burdensome, and is not narrowly tailored to the claims PTAP is considering, or PTAP

14

at all. Indeed, even in PTAP's own words, it was the "exclusive reseller of the Pinewood DMS to motor vehicle dealerships within *certain* territories in the Asia Pacific region." *See* Dkt. 5-6 pg. 3 ¶ 4. It was not the exclusive seller for the entire Asia Pacific region and, likewise, Pinewood Technologies' requested sales and distribution documents have no relevance to the fraud claims PTAP seeks to bring, namely, that *after* PTAP's "success in the region," Pinewood Technologies "tricked [it] into sharing its contacts, immediate and long-term expansion strategies, projections, and labor, only to terminate both Reseller Agreements and walk away." Dkt. 4 pg. 3.

Likewise, the third request seeks *all* documents and communications relating to any actual or potential liability or litigation between Pinewood Technologies and *any resellers* of the DMS. *See* Dkt. 6-5 pg. 7 ¶ 3. This is also overly intrusive and wholly irrelevant to PTAP or the UK Action, and lacks any relevance to the purported fraud claims that PTAP seeks to bring. Simply put, this request is another example of PTAP's fishing expedition. Dkt. 5-8 ¶ 71.

PTAP's fourth and fifth requests for documents are likewise unduly intrusive and burdensome. *See* Dkt. 6-5 pg. 7 ¶ 4-5. The fourth request seeks from Berman—not Pinewood Technologies or Pendragon—*all* documents "evidencing any deliberation or decision to sell" Pinewood Technologies' DMS "direct to market in the Asia Pacific region or to continue to utilize the reseller model," and the fifth request seeks all documents *relating* to the acquisition of Pendragon's "Fleet Management and UK Motor Divisions and the strategic partnership" with Pinewood Technologies, which relate to either Pinewood Technologies' "business or potential future business in the Asia Pacific Region," "strategy, forecasts and/or growth plans relating to the Asia Pacific market," the "value attributed to the Asia Pacific market" and its basis. *Id*. These requests are improper and demonstrate that PTAP is using the Petition as a means to get from Berman, in his individual capacity and not as a Statutory Director for Pinewood or Chief Executive

15

Officer of Pendragon, documents it wants from Pinewood Technologies or Pendragon. *See LAE Techs. Hong Kong Ltd. v. Demuren*, 2024 WL 863464, at *7 (granting motion to quash as to deposition of chief executive officer and certain discovery requests and finding that "it would be unduly burdensome" to require the chief executive officer to search for the information, especially where the information is "most likely to be in the possession, custody and control of [the litigating entities], and not [the apex witness] personally."). As drafted, these requests cannot stand. *In re Bernal*, 2018 WL 6620085, at *9 (S.D. Fla. Dec. 18, 2018).

Further, both requests concern the Asia Pacific geographic market. This is also overbroad, at the very least, because PTAP could not have a claim for fraud against Pinewood Technologies as it relates to the *entire* Asia Pacific region. *See* Dkt. 5-6 pg. 3 ¶ 4. For these reasons, the fourth *Intel* factor supports that PTAP's subpoena should be quashed and Berman's Motion granted.

### 4. The requested discovery is prohibited by the apex witness doctrine.

The apex witness doctrine is clear that high-ranking corporate executives cannot be deposed unless the executive has personal or unique knowledge of the relevant facts and other means of discovery have been exhausted. *See Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015). In addition, the moving party "has the burden to show that the deposition is necessary." *Id*. "In certain cases, even when a high-ranking official of a corporation does have direct knowledge of the facts, it is inappropriate to compel his or her deposition without first deposing lesser-ranking employees who have more direct knowledge of the facts at issue." *Id.* at 528 (holding that the movant had not made a showing that the information it sought could not be obtained through less burdensome means, including because it had not yet deposed any other lesser-ranking employee to conduct discovery of the facts at issue).

16

The apex witness doctrine is equally applicable to petitions for assistance under Section 1782. To demonstrate, in *Frasers Grp. PLC*, the Frasers Group bought claims against a subsidiary of Morgan Stanley in the High Court, but then applied to the district court to depose the Chairman and Chief Executive Officer of Morgan Stanley pursuant to Section 1782. *Frasers Group PLC*, 2023 WL 6938284, at *1. The district court denied the application for judicial assistance "based on its holistic evaluation of the *Intel* factors and mindful that [the deponent] is a paradigmatic "apex witness." *Id*. at *2. Specifically, while the first and fourth *Intel* factors strongly supported denying the application, and the second and third factors moderately favored granting it, the district court held that the petitioner's request to depose the apex was "even more plainly and unjustifiably burdensome, so much so as to require denial of this aspect of the § 1782 application." *Id*. at *3 ("That the *Intel* factors, viewed as a whole, strongly disfavor Frasers Group's bid to depose Mr. Gorman is reinforced by his status as a quintessential "apex witness."). Like PTAP here, the court found that "[f]ar from demonstrating that [the apex] had unique personal knowledge . . . [petitioner] has not adduced any evidence to that effect. Indeed, despite receiving extensive document discovery in the English proceeding, [petitioner] . . . retreated instead to the theory that [the apex] had been involved in formulating a policy . . . which may have influenced the decision to make the Margin Call at issue here." *Id*. at *3-4. It therefore held that, "[w]ithout more, that evidence is too tenuous to demonstrate [the apex's] personal role in connection with the margin call at issue, let alone his "unique personal knowledge." *Id.* (holding that petitioner could seek discovery elsewhere, including from lower-ranking personnel); *see also LAE Techs. Hong Kong Ltd. v. Demuren*, 2024 WL 863464, at *7-8 (granting the motion to quash as to certain document requests and the deposition of the chief executive officer of the entity involved in the underlying litigation pending in Hong Kong, and finding his deposition to be an unreasonable burden where there was

a "lack of any showing" that he had specific personal or unique knowledge regarding the underlying litigation or that the information couldn't be obtained from other sources).

Here, Berman is the Statutory Director for Pinewood Technologies and the Chief Executive Officer of Pendragon, Pinewood Technologies' parent, and PTAP has not shown that he has relevant facts or some unique or personal knowledge that is relevant to PTAP's prospective claim. That is why PTAP's Memorandum of Law in support of its Petition for Assistance contains limited discussion and no proof of Berman's putative relevance. *See generally* Dkt. 4. For example, PTAP states that:

- "Mr. Berman's installation as CEO of Pendragon PLC in February 2020 coincided with [PTAP's] presentation of information in connection with a potential investment from [Pinewood Technologies]." Dkt. 4 at pg. 9.

This does not speak to any unique or personal knowledge that Berman has, it simply notes an event that occurred early in his tenure. Similarly, generalizations elsewhere in PTAP's Petition and supporting documents are likewise deficient:

- "At the same time, [Pinewood Technologies'] demands for information and data from [PTAP] escalated. This was all under Mr. Berman's ultimate control."[8] Dkt. 4 at 9.

- "Mr. Berman *can be expected* to have knowledge concerning how, if at all, [Pinewood Technologies'] potential liability for breach of contract and/or fraud was presented in the due diligence phase of the Lithia deal." Dkt. 4 at 9 (emphasis added).

- "The documents obtained and testimony elicited from Mr. Berman are expected to establish that *Pendragon* intended to dispense with resellers." Dkt. 4 at 15.

- "Petitioner seeks to depose Mr. Berman about a discrete component of Pendragon's operations and its strategy for a single geographic aspect of the business of *its subsidiary*." Dkt. 4 at 15-16 (emphasis added).

---

[8] PTAP was required to provide various information to Pinewood Technology pursuant to various clauses in the Reseller Agreements. *See* Dkt. 5-8 ¶ 10. .

The recitations above are pure speculation as to what Berman *might* know, so they necessarily do not address whether Berman has any unique or personal knowledge about anything at issue in the subpoena. *In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria*, No. MDL 1428 (SAS) (THK), 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006). Therefore, the Subpoena should be quashed and the discovery from Berman prohibited under the apex witness doctrine.

## CONCLUSION

This petition is not an attempt to assist the UK Court, which is the purpose of Section 1782, it is an attempt to undermine the UK Court's rulings on matters it has already considered and rejected. For the reasons detailed above, Berman moves to quash the Subpoena because PTAP's Petition fails to satisfy the statutory requirements under Section 1782 and the *Intel* factors, and the discovery should otherwise be prohibited under the apex doctrine.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for the movant has certified that they conferred with counsel for Petitioner, the only party or non-party who may be affected by the relief sought in this Motion, in a good faith effort to resolve the issues raised by this Motion and has been unable to do so. Petitioner does not agree on the resolution of the Motion.

**DATED** this 23rd day of April, 2024.

                                              /s/ Anisha P. Patel
                                              David L. Luikart III (FBN: 21079)
                                              dave.luikart@hwhlaw.com
                                              michelle.armstrong@hwhlaw.com
                                              Anisha P. Patel (FBN: 116448)
                                              anisha.patel@hwhlaw.com
                                              regina.bigness@hwhlaw.com
                                              HILL WARD & HENDERSON, P.A.
                                              101 E. Kennedy Blvd., Suite 3700
                                              Tampa, Florida 33602
                                              (813) 221-3900 (Telephone)
                                              (813) 221-2900 (Facsimile)
                                              ***Attorneys for Respondent William Berman***

19489242v1